| | |
|---|---|
| GEORGIA M. PESTANA<br>Corporation Counsel of the City of New York<br>Attorney for the City of New York and Its Agencies<br> 100 Church Street, Room 5-223<br>New York, New York 10007<br>(212) 356-2134<br>Gabriela P. Cacuci, Esq.<br>gcacuci@law.nyc.gov | Hearing Date: 6/30/21@ 2:00 p.m<br>Objection Date:  6/29/21 |

**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF NEW YORK**
-----------------------------------------------------------x
In re:

W 133 OWNER LLC,

      Debtor.
-----------------------------------------------------------x

Chapter 11

Case No. 20-42637 (NHL)

### THE CITY OF NEW YORK'S OPPOSITION TO CH. 11 TRUSTEE'S
### MOTION TO EXTEND OR TOLL RPTL § 421-a APPLICATION DEADLINE

    The City of New York, by GEORGIA M. PESTANA, Corporation Counsel of the City of New York, hereby objects to the Motion for an Order Extending or Tolling Deadline to Apply for Tax Exemptions Pursuant to Section 421-a of the New York Real Property Tax Law (the "Motion") filed by Lori Lapin Jones, Esq., as Chapter 11 Trustee of W 133 Owner, LLC on June 17, 2021 (ecf # 131).  In support thereof, the City states as follows:

### Background

    1.  W 133 Owner, LLC (the "Debtor") filed a Chapter 11 petition under Title 11 of the United States Code Section 101 et seq. (the "Bankruptcy Code") on July 16, 2020 (the "Petition Date").

    2.  By Order entered on September 14, 2020, Lori Lapin Jones, Esq. was appointed as Chapter 11 Trustee (the "Trustee").  The Trustee has been administering the

Debtor's property at 308-310 West 133 Street, New York, New York 10030 (the "Property") since her appointment.

3. The Property, which consists of, inter alia, 46 residential units and one ground floor commercial unit, is a newly constructed multiple dwelling originally intended to be used as a condominium and governed by a Condominium Offering Plan approved pre-Petition by the New York State Attorney General. The Property is encumbered by, inter alia, City senior liens and a mortgage held by Harlem 133 Lender, LLC (the "Lender"), which is owed in excess of $33 million.

4. Claiming to have been unable to sell the condominium units (an allegation that is disputed by the Lender), the Debtor attempted to convert the Property to a rental property, and with the assistance of Steward Management, contacted the New York City Department of Social Services ("DSS"[1] and represented that it was the Property owner and that it was authorized to rent units at the Property. As a result, for at least one year, approximately 30 residential units at the Property have been occupied by formerly homeless families that receive subsidies from DSS. DSS has provided the Trustee with all the information requested concerning the leases at the Property and the DSS subsidies being provided in connection with those leases and has directed that all payments be made directly to the Trustee.

5. Pre-Petition, the Debtor had engaged Seiden & Schein as tax counsel and applied to HPD for a tax exemption under Real Property Tax Law ("RPTL") § 421-a(16) and Chapter 51 of Title 28 of the Rules of the City of New York, 28 RCNY 51-01 (the "Affordable New York Housing Program" and, respectively, the "Affordable New York Housing Program

---

[1] DSS has an interest in preserving the opportunity for the future owner of the building to apply for a 421-a status, which would maximize the possibility that the 30 formerly homeless families could continue to reside at the Property.

Rules"), and HPD approved the 421-a workbook in connection therewith (the "Workbook"). The Workbook designated fourteen (14) of the 46 units as affordable units under Affordability Option C.[2] As noted in the Motion at ¶ 21, Seiden & Schein eventually turned over certain requested information to the Trustee. In addition, the Lender sought information from HPD via FOIL.

6. Approximately six months ago, the Lender, DSS and HPD commenced discussions towards Lender's possible use of the Property as a rental property in the event the Lender was the successful bidder, so that the 30 formerly homeless families currently residing there would be able to remain in the building. After the Trustee's appointment, the Trustee also participated in a number of settlement discussions with DSS and HPD, which continued until recently.

7. By Order dated March 8, 2021 (ecf # 97), the Court approved the Trustee's Stipulation with the Lender Respecting the Sale of the Property dated February 4, 2021, annexed as Exhibit A thereto.

8. By Order dated May 28, 2021 (the "Procedures Order"), the Court authorized the public auction sale of the Property by the Trustee. In accordance with the Procedures Order, the Trustee, through her retained broker, MYC & Associates, Inc. (the "Broker") will conduct a virtual public auction of the sale of the Property on July 15, 2021 at 11:00 a.m. By Notice to Creditors and Other Parties in Interest filed on June 18, 2021, the Trustee provided notice of the Intended Property Sale.

---

[2] That option required that at least 30% of dwelling units be affordable (at or below 130% AMI) and developed without the substantial assistance of grants, loans or subsidies provided by a federal, state or local agency or instrumentality pursuant to a program for the development of affordable housing.

3

9. On June 17, 2021, the Trustee filed the Motion (ecf # 132) on shortened notice requesting the Court to enter an order "extending or tolling" the statutory deadline of July 2, 2021 (the "Statutory Deadline") pursuant to RPTL § 421-a by which an application for a tax exemption (the "Tax Exemption Application") under that section would have to be filed with the HPDs Tax Incentive Unit for the Property. By Order Shortening Time entered later that day (ecf # 133), the Court scheduled a hearing on the Trustee's Motion for June 30, 2021 at 2:00 p.m, with objections to the Motion due by June 29, 2021.

## THE TRUSTEE'S MOTION SHOULD BE DENIED
## AS IT IS NOT SUPPORTED BY APPLICABLE LAW

### A. 11 U.S.C. § 108(a) Is Not Applicable
### To A Tax Exemption Application

10. The Trustee's Motion seeks a four (4) months extension of the Statutory Deadline -- until November 2, 2021 – to preserve the option for the successful bidder at the future Auction to pursue the 421-a tax exemption should it decide to use the Property as a rental, as opposed to a condominium. A sale confirmation hearing is presently scheduled for July 20, 2021 ("Sale Hearing"). The Trustee implies that the Statutory Deadline might have been or could be tolled or extended but does not cite any legal authority in support of her request.

11. 11 U.S.C. § 108 provides:

(a) <u>If applicable nonbankruptcy law</u>, an order entered in a non-bankruptcy proceeding, or an agreement fixes a period of time within which the debtor <u>may commence an action</u>, and such period has not expired before the date of the filing of the petition, the trustee <u>may commence such action</u> only before the later of ---

> (1) the end of such period, including any suspension
> of such period occurring on or after the
> commencement of the case; or
> (2) two years after the order of relief.

4

(Emphasis added).

12. Neither the Trustee's completion of construction at the Property, nor the Trustee's filing of the Tax Benefits Application with HPD constitutes "an action" within the meaning of 11 U.S.C. § 108(a). The term "action" in 11 U.S.C. § 108(a) refers to a legal action in a court of law. Sheet Metal Workers Int'l Ass'n v. Custom Air Sys., Inc., 333 F.3d 345 (2d Cir. 2003), remanded, 357 F.3d 266 (2d Cir. 2004); Am. Bullion Exch. Corp. v. Giddens (In re MF Global, Inc.), 2015 U.S. Dist. Lexis 106933 at *4 (S.D.N.Y. 2015), citing In re Dawnwood Props., 209 F. 3d 114, 117 (2d Cir. 2000), affirming dismissal of adversary proceeding initiated by the debtor as time barred; GNK Enterprises Inc. v. Conagra, Inc. (In re GNK Enterprises, Inc.), 197 B.R. 444, 448 (Bankr. S.D.N.Y. 1996) (finding that Section 108(a) could apply to extend time to commence state fraud, misrepresentation, breach of contract, and negligence actions but not granting the extensions because the applicable time periods had expired); Scherling v. Hellman Elec. Corp. (In re Westchester Structures, Inc.), 181 B.R. 730, 741, n. 17 (Bankr. S.D.N.Y. 1989) (applying Section 108(a) to extend time to commence an action under N.Y. Lien Law). Thus, the Trustee cannot use Section 108(a) as an implied legal basis on which to request that the Statutory Deadline be extended.

### B. 11 U.S.C. § 108(b) Is Not Applicable Because The Time Period Thereunder Has Expired And Cannot Be Extended or Tolled

13. 11 U.S.C. § 108 also provides:

(b) Except as provided in subsection (a), <u>if applicable nonbankruptcy law</u>, an order entered in a non-bankruptcy proceeding, or an agreement fixes a period of time within which the debtor … <u>may file any pleading, demand, notice, or proof of claim or loss, cure a default, or perform any other similar act,</u> and such period has not expired before the date of the filing of the petition, the trustee <u>may only file, cure, or perform, as the case may be</u>, before the later of ---

> (1) the end of such period, including any suspension of such period occurring on or after the commencement of the case; or
> (2) 60 days after the order for relief.

(Emphasis added).

14. Even if the Tax Exemption Application were, <u>arguendo</u>, deemed to be the type of "act" similar to a "demand" or "notice" described in Section 108(b), more than 60 days have passed since the order for relief because the Debtor filed its Chapter 11 petition on July 16, 2020. Accordingly, the Trustee cannot use Section 108(b) as an implied basis for its proposed order extending or tolling the Statutory Deadline for the Tax Benefits Application.

### C. 11 U.S.C. § 108 Does Not Operate As An Equitable Toll

15. "Section 108 does not operate like an equitable toll – it is not indefinite in effect (an equitable toll, at least conceptually, has no outer limitation) <u>and it does not hinge upon considerations of equity</u>. Rather, section 108 applies for a fixed period of time under a limited set of circumstances, and it exists by statute, which statute leaves no room for an argument of non-application based upon a particular set of circumstances, equitable or otherwise (section 108 applies to "applicable nonbankruptcy law" without apparent limitation)." <u>Mishkin v. Ageloff</u>, 1998 U.S. Dist. Lexis 14890 at *14 (S.D.N.Y. 1998) (emphasis added) (extending time to commence an action under section 10(b) of the Securities and Exchange Act of 1934) (footnote omitted). <u>See</u> <u>also</u> <u>Durso Supermarkets v. D'Urso (In re Durso Supermarkets)</u>, 1995 U.S. Dist. Lexis 18440 at * 17 (S.D.N.Y. 1995) (holding that amended complaint filed two years and two days after the petition date was barred by Section 108(a) which provides only a two-year extension on any statute of limitations that had not expired as of the petition date).

### D. Bankruptcy Courts Cannot Use Their Power Under 11 U.S.C. § 105 To Modify Statutory Deadlines Established by the State Legislature

6

16. 11 U.S.C. § 105 titled "Power of Court" states:

(a) The court may issue any order, process, or judgment that is necessary or appropriate <u>to carry out the provisions of this title</u>. No provision of this title providing for the raising of an issue by a party in interest shall be construed to preclude the court from, *sua sponte*, taking any action or making any determination necessary or appropriate <u>to enforce or implement court orders or rules, or to prevent an abuse of process</u>.

\*    \*    \*

(c) The ability of any district judge or other officer or employee of a district court to exercise any of the authority or responsibilities conferred upon the court under this title <u>shall be determined by reference to the provisions relating to such judge, officer, or employee set forth in title 28</u>. <u>This subsection shall not be interpreted to exclude bankruptcy judges</u> … appointed pursuant to chapter 6 of title 28 <u>from its operation</u>.

(Emphasis added).

17. Congress was unambiguous in its limitations on bankruptcy courts' powers under Section 105. Bankruptcy courts' powers to issue "any order, process, or judgment" must be "necessary or appropriate" and must "carry out" the provisions of title 11 and not be in contravention thereof. The reference in subsection (c) to title 28, where § 1334 sets forth a bankruptcy court's jurisdiction[3], as well as the list of <u>procedural</u> orders set forth in subsection (d) clearly show that a bankruptcy court lacks the power to modify a state court statute of limitation (<u>see</u> <u>e.g</u>. 11 U.S.C. § 505(a)(2)(A) and (a)(2)(C)) or, as here, a deadline imposed by state statute, <u>i.e.</u>, RPTL § 421-a(16).

18. Section 105 was reviewed by the Supreme Court of the United States in <u>Law v. Siegel</u>, 134 S. Ct. 1188, 188 L.Ed.2d 146 (2014). In that case, the Supreme Court reversed the

---

[3] 28 U.S.C section 1334 titled "bankruptcy cases and proceedings" sets forth the district court and bankruptcy courts' respective jurisdictions. An application for a tax exemption under RPTL could not possibly be a matter "arising under title 11 or arising in a case under title 11" as it could not be commenced in a federal court. It is rather a matter strictly of state law over which this Court would have at most "related to" jurisdiction.

7

judgment below holding that the Chapter 7 trustee could not use §105 to "surcharge" the debtor's exempt property with debts and expenses incurred by the trustee for which the property was not liable under Section 522 of the Bankruptcy Code. The Supreme Court stated:

> "It is hornbook law that §105(a) 'does not allow the bankruptcy court to override explicit mandates of other sections of the Bankruptcy Code.' 2 Collier on Bankruptcy ¶ 105.01[2], p. 105-6 (16th ed. 2013). Section 105(a) confers authority to 'carry out' the provisions of the Code, but it is quite impossible to do that by taking action that the Code prohibits.…<u>Courts' inherent sanctioning powers are likewise subordinate to valid statutory directives and prohibitions</u>. *Degen v. United States*, 517 U.S. 820, 823 (1996); *Chambers v. NASCO, Inc.*, 501 U.S. 32, 47 (1991). We have long held that 'whatever equitable powers remain in the bankruptcy courts must and can only be exercised within the confines of' the Bankruptcy Code. *Norwest Bank Worthington v. Ahlers*, 485 U.S. 197, 206 (1988); *see e.g., Raleigh v. Illinois Dept. of Revenue*, 530 U.S. 15, 24-25 (2000); *SEC v. United States Realty & Improvement Co.*, 310 U.S. 434, 455 (1940)"

<u>Id</u>., at page 6 of Slip Opinion. Accord, <u>Geron v. Valeray Realty Co. (In re Hudson Transfer Group, Inc.)</u>, 245 B.R. 456, 458-60 (Bankr. S.D.N.Y. 2000) (Section 108(b) cannot be extended "for cause" or alleged "equitable grounds" noting that "the majority of courts that have considered the issue have concluded that the court cannot utilize its powers under § 105 to extend [a] cure period, at least not in the absence of some wrongdoing by the non-debtor party."); <u>Norwest Bank Worthington v. Ahlers</u>, 485 U.S. 197, 206, 108 S. Ct. 963, 99 L.Ed.2d 169 (1988) (bankruptcy court under section 105(a) "may exercise its equitable power only as a means to fulfill some specific Code provision"); <u>Noonan v. Secretary of HHS (In re Ludlow Hosp. Soc'y)</u>, 124 F.3d 22, 30 (1st Cir. 1997) ("although section 108(b) obviously allows the trustee in bankruptcy a sixty-day grace period unavailable to the pre-petition debtor, it just as plainly bespeaks a legislative intent to cut off the

extension period, either at 60 days from the filing of the chapter 7 petition or upon the expiration of any remaining prepetition period, whichever occurs later."); Max v. Northington (In re Northington), 876 F.3d 1302, 1313 (11th Cir. 2017) (rejecting the view that the general automatic stay provision set forth in § 362(a) could control the more specific time limitation set forth in § 108(b), and noting that such an interpretation would render § 108(b) superfluous because "§ 108(b)'s specific tolling provision … expressly extends a debtor's state-law grace period, but only temporarily, for a finite term of 60 days…").

19. Thus, any suggestion that the Statutory Deadline for the Tax Exemption Application was or could be tolled or extended is without merit. The mere fact that the Statutory Deadline has not yet expired does not change this Court's lack of authority to extend prospectively the July 2, 2021 Statutory Deadline under RPTL § 421-a(16). See Johnson v. First Nat'l Bank of Montevideo, 719 F.2d 270, 273, 277-78 (8th Cir. 1983) (holding that bankruptcy court could not use § 105(a) to extend period for redeeming property under state law, a matter within § 108(b)'s ambit). The City established above that neither Section 108(a), nor Section 108(b) is applicable to the facts before this Court.

20. Chapter 20 of the Laws of 2015, which took effect on June 15, 2015, and Chapter 59 of the Laws of 2017, which took effect on April 10, 2017, made certain changes to RPTL § 421-a Affordable New York Housing Program. This new 421-a Program is available to projects that commence construction between January 1, 2016 and June 15, 2022. Section 421-a(16) – under which the Workbook was approved by HPD – defines "commencement date" and "completion date" in (xxi) and (xxii), respectively. Compliance with every provision of the law either qualifies or fails to qualify a project for the tax exemption. In this case, the Tax Benefits Application under this program would have to be filed within one year after the completion date where "completion date" refers to the date of the issuance of the first temporary or permanent Certificate of Occupancy for all

9

of the residential areas of the Property. As noted by the Trustee in the Motion at ¶ 9, the New York City Department of Buildings issued a Temporary Certificate of Occupancy ("TCO") covering all residential areas of the Property on July 2, 2020. Therefore, the Tax Benefits Application would have to be filed by July 2, 2021.

21. RPTL § 421-a is very technical and specific with respect to the allowable commencement and completion dates for projects that may qualify for a tax exemption under the statute. Chapter 20 of the Laws of 2015, which took effect June 15, 2015, and Chapter 59 of the Laws of 2017, which took effect April 10, 2017, both (a) extended the date by which a project must commence construction in order to still qualify under the pre-existing 421-a program (i.e., 421-a(1-15)) ("Old Program"), to require that any project that commenced construction after June 15, 2015 and on or before December 31, 2015 must be completed on or before December 31, 2019 in order to qualify under the Old Program; and (b) established a new 421-a tax program (421-a(16)) for any project that commenced construction between January 1, 2016 and June 15, 2022 and was completed on or before June 15, 2026..

22. "Commencement date" and "completion date" for the construction of a multiple dwelling are defined terms that determine whether or not a project qualifies for tax benefits. All of these terms are statutory. Thus, to argue – as the Trustee does in its Motion – that this Court has the equitable power and discretion under Section 105 to "extend" or "toll" the July 2, 2021 Statutory Deadline for filing the Tax Exemption Application is the equivalent of saying that this Court has the power to act *in lieu* of the State Legislature and amend statutory provisions that separate qualifying projects from those that do not qualify under RPTL § 421-a. The Trustee has cited no legal authority in support of this radical position.

### E. The Federal Equitable Tolling Doctrine Is Inapplicable Here

23. Nor can a Debtor or Trustee rely on a general "equitable tolling" doctrine, outside Section 108, to extend or toll a Debtor's or Trustee's time to complete the construction or file the Tax Exemption Application. This common law federal doctrine does not apply to state statute of limitations. See e.g., Holland v. Florida, 560 U.S. 631, 645, 650, 130 S. Ct. 2549, 2560, 177 L.Ed.2d 130, 143 (2010), discussing its earlier decision in Coleman v. Thompson, 501 U.S. 722, 752-53, 111 S. Ct. 2546, 115 L.Ed.2d 640 (1991) stating: "But *Coleman* was 'a case about federalism'…in that it asked whether *federal* courts may excuse a petitioner's failure to comply with a *state court's* procedural rules, notwithstanding the state court's determination that its own rules had been violated. Equitable tolling, by contrast, asks whether federal courts may excuse a petitioner's failure to comply with *federal* timing rules, an inquiry that does not implicate a state court's interpretation of state law.…" Holland, 560 U.S. 650, 130 S. Ct. at 2563, 177 L.Ed.2d at 146.

24. Equitable tolling does not apply here. "Statutes of limitation are generally subject to equitable tolling where necessary to prevent unfairness to a plaintiff who is not at fault for her lateness in filing." Veltri v. Bldg. Serv. 32b-J Pension Fund, 393 F.3d 318, 322 (2d Cir. 2004); Haekal v. Refco, Inc., 198 F.3d 37, 43 (2d Cir. 1999). Equitable tolling is an extraordinary measure that applies only when plaintiff is prevented from filing despite exercising that level of diligence which could reasonably be expected in the circumstances. See Irwin v. Department of Veteran's Affairs, 498 U.S. 89, 96, 111 S. Ct. 453, 112 L.Ed.2d 435 (1990). The Trustee has not demonstrated that she was actually prevented from filing the Tax Exemption Application by the Statutory Deadline.

25. "Under federal common law, a statute of limitations may be tolled due to the defendant's fraudulent concealment if the plaintiff establishes that: (1) the defendant wrongfully concealed material facts relating to defendant's wrongdoing; (2) the concealment prevented plaintiff's discovery of the nature of the claim within the limitations period; and (3) plaintiff exercised due diligence in pursuing the discovery of the claim during the period plaintiff seeks to have tolled." Koch v. Christie's International PLC, 699 F.3d 141, 157 (2d Cir. 2012); Pearl v. City of Long Beach, 296 F.3d 76, 80 n. 3 (2d Cir. 2002) (collecting cases and holding that where defendant is responsible for concealing the existence of plaintiff's cause of action, equitable tolling may be appropriate).

26. Absent such circumstances, the "extraordinary remedy" of equitable tolling cannot be used. See Demartino v. New York, 2013 U.S. Dist. Lexis 89188 at *47, 54 (E.D.N.Y. 2013) (dismissing some of plaintiffs' claims under Section 1983 as time barred and refusing to toll the statute of limitations under "federal common law" where plaintiffs "have not even alleged, much less demonstrated, that any defendant made a misrepresentation to plaintiffs upon which they reasonably relied in failing to timely file the complaint), citing Koch, infra, and Corcoran v. N.Y. Power Authority, 202 F.3d 530 (2d Cir. 1999); Franzone v. Elias (In re Elias), 2014 U.S. Dist. Lexis 39591 (E.D.N.Y. 2014) (affirming bankruptcy court's order dismissing plaintiff's motion for leave to amend to object to discharge where motion was filed after the expiration of the deadline for filing a complaint objecting to discharge or dischargeability).

27. The Trustee's Motion is replete with alleged misconduct by the Debtor, which led to the Court's appointment of the Trustee. However, any attempt to impute wrongdoing to DSS because the leasing agreements are not uniform or because DSS subsidized the rents payable by the residents at the Property is unfair and improper. I have been advised

that DSS was not aware of the condominium offering, the terms of the Lender's note and mortgage, the pre-Petition state court litigation, and generally of the prohibitions against the use of the Property as a rental property.   Also, upon information and belief, the former homeless families had moved into the Property prior to the entry of the TRO.  DSS reasonably relied on Debtor's deed for the Property and its written representations that it was authorized to rent the Property.  It is not customary for DSS to check ACRIS or to investigate property owners before leasing units.  Under no circumstances does the Debtor's misconduct herein justify an order extending or tolling the July 2, 2021 statutory deadline which must be equally and uniformly applied to all property owners throughout the City.

28. Therefore, the Trustee has failed to establish any legal basis on which this Court could issue an order "tolling" or "extending" the Statutory Deadline.  Neither Section 108, nor Section 105, affords the Trustee a legal basis for the proposed modification of Statutory Deadline.

### EVEN ASSUMING, *ARGUENDO*, THAT THIS COURT HAD THE AUTHORITY OR DISCRETION TO MODIFY THE STATUTORY DEADLINE, THE COURT SHOULD REFUSE TO EXERCISE SUCH POWER TO EXTEND THE JULY 2, 2021 DEADLINE

29. Statutory deadlines under applicable non-bankruptcy law should not be taken lightly. This Court should not substitute its judgment for that of the administrative agency (HPD) charged with enforcing the statute and enacting applicable rules. Gramercy North Assoc. v. Biderman, 169 A.D.2d 345, 573 N.Y.S.2d 491 (1st Dep't 1991), exemplifies the technical nature of Section 421-a, and how a factual determination of when "commencement" of

13

construction occurs is determinative of whether a partial tax exemption application is granted or denied.[4]

30. In her Motion at ¶ 2, the Trustee states unequivocally that, if she had to make a decision now as to whether to apply, "she will not file a 421-a application." The Lender also expressed its skepticism to HPD and DSS over the financial feasibility of the building if used as a rental with all units being affordable, as proposed by HPD. Thus, the Trustee is asking this Court to issue an order that in the City's view exceeds the Court's jurisdiction for a scenario that may not even occur. The City urges the Court to consider the irreparable harm such an order would do to HPD's Office of Tax Incentive Programs by creating a precedent that could open the floodgates to other taxpayers seeking extensions of the applicable statutory deadlines. This Court is bound to apply non-bankruptcy law with respect to any tax exemption entitlement. The Court of Appeals has held that "the burden of proof lies with the taxpayer who is seeking to have real property declared tax exempt." Matter of New York Botanical Garden v. Assessors of Town of Wash., 55 N.T.2d 328, 334 (1982); Matter of Grossman v. Rankin, 43 N.Y.2d 493, 502 (1977), both cited in Gramercy North Assoc., supra, 169 A.D.2d at 348.

31. The City acknowledges and is grateful for the Trustee's hard work and the substantial progress the Trustee has made in administering this Property. The Trustee presents at length the difficulties she had been presented with at the Property because of the Debtor's

---

[4] Petitioner in Gramercy North contended that it timely commenced construction in good faith within the deadline set forth in RPTL § 421-a and New York City Administrative Code § 11-245(a) and (d) because "one footing was sunk in the ground by the cutoff date." After reviewing the entire factual record below, the Appellate Division reversed the lower court, upheld HPD's rational determination and denied the petitioner's application for a partial tax exemption. The court stated: "It is apparent to this court, that the credible evidence in the record, indicates that one concrete footing was poured two days before the expiration date set forth in the local law. It also is apparent that this single footing was discarded within five days after being poured and the building was erected without any utilization of that footing." 169 A.D.2d at 350.

wrongdoing. However, this was a situation created by the Debtor, not the City. The fact that the Trustee has had to address numerous issues at the Property does not give the Trustee a legal or equitable basis to compel the City - via a bankruptcy court order - to extend a uniformly applied RPTL statutory deadline that affects all taxpayers interested in applying for a Section 421-a tax exemption.

32. The Trustee has been aware of the impending deadline for months and could have filed (and possibly can still do so) a timely 421-a Tax Exemption Application prior to the July 2, 2021 Statutory Deadline. HPD has informed the Trustee that while the TCO would be required before any tax benefits are approved, the TCO does not have to be on file before the Tax Exemption Application is filed. Similarly, the Trustee's argument that in order for her to apply, she would have to "put her imprimatur on housing agreements and/or occupancies that are seriously defective and the validity of which have been challenged in pre-petition state court litigation and previewed in this Chapter 11 case … " (Motion at ¶ 2) is only a red herring.

33. Since the original Workbook referred to 14 prospective affordable units, the Workbook would have to be amended and approved by HPD prior to the Statutory Deadline in order to accurately reflect the current occupancies. The Trustee has failed to show why its highly qualified and very expensive counsel could not follow the detailed workbook online instructions and do so. It cannot be questioned that of all the parties involved in this case the Trustee has the most knowledge and the best documentation (albeit somewhat inconsistent) concerning the leases and the current occupants of the Property.

## CONCLUSION

34. This Court does not have the requisite power under either Section 108 or Section 105 to toll or extend the July 2, 2021 RPTL 421-a Statutory Deadline. But even if the

Court were, arguendo, to have such power or discretion, it should not exercise it to extend the Statutory Deadline because the Trustee and her tax counsel have failed to show that it was or it is impossible for them to comply with the Statutory Deadline.  Under the circumstances, tolling or extending the Statutory Deadline would harm the City and the carefully constructed 421-a statutory scheme.  The Court should not engage in such an extraordinary exercise on account of an admitted "hypothetical" and "unlikely" scenario under which the potential purchaser may wish to avail itself of the rental option and the possibility of a 421-a tax exemption.

35.    While the successful bidder will not be known until after the auction, the Lender has conceded on more than one occasion that it is highly likely that its credit bid would be the highest bid for the Property and that the Lender is clearly not inclined to continue the Property rental.  The City believes it would be inequitable to extend the Statutory Deadline and make HPD's limited staff devote even more resources than they have devoted so far in this case where the successful bidder is not likely to proceed with the 421-a application and where the current Property leases may be rejected.  Accordingly, for all of the reasons set forth above, the City respectfully requests that the Trustee's Motion to extend or toll the July 2, 2021 RPTL Section 421-a deadline be denied.

Dated:  New York, New York
　　　　June 28, 2021

　　　　　　　　　　　　　　　　　　　GEORGIA M. PESTANA
　　　　　　　　　　　　　　　　　　　Corporation Counsel of the
　　　　　　　　　　　　　　　　　　　　City of New York
　　　　　　　　　　　　　　　　　　　Attorney for the City of New York
　　　　　　　　　　　　　　　　　　　100 Church Street
　　　　　　　　　　　　　　　　　　　New York, New York 10007
　　　　　　　　　　　　　　　　　　　(212) 356-2134

　　　　　　　　　　　　　　　　　　　By:    /s/Gabriela P. Cacuci  ____
　　　　　　　　　　　　　　　　　　　　　　Gabriela P. Cacuci

# CERTIFICATE OF SERVICE

I, Gabriela P. Cacuci, an attorney admitted to practice before the courts of the State of New York, do hereby certify that on June 28, 2021, I served a true copy of The City of New York's Opposition to Ch. 11 Trustee's Motion to Extend or Toll RPTL § 421-a Application Deadline by electronic service on the persons listed below:

LORI LAPIN JONES PLLC
Lori Lapin Jones, Esq.
Chapter 11 Trustee
98 Cutter Mill Road - Suite 255 South
Great Neck, New York 11021
Tel: (516) 466-4110
Fax: (516) 466-4009
ljones@jonespllc.com

LaMONICA HERBST & MANISCALCO, LLP
Counsel to Lori Lapin Jones, Esq., as Chapter 11 Trustee
Salvatore LaMonica, Esq.
Holly R. Holecek, Esq.
3305 Jerusalem Avenue, Suite 201
Wantagh, New York 11793
Tel: (516) 826-6500
HRH@LHMLawFirm.com

REED SMITH LLP
Counsel to Harlem133 Lender, LLC
Christopher A. Lynch, Esq.
Joseph J. Tuso, Esq. (admitted *pro hac vice*)
599 Lexington Avenue, 22nd Floor
New York, New York 10022
Tel: (212) 521-5400
clynch@reedsmith.com
jtuso@reedsmith.com

ROSENBERG, MUSSO & WEINER, LLP
Counsel to the Debtor W 133 Owner LLC
Bruce Weiner, Esq.
26 Court Street, Suite 2211
Brooklyn, New York 11242
Tel: (718) 855-6840
courts@nybankruptcy.net

Debtor, W 133 Owner LLC
Levi Balkani
levi@happylivingdev.com

Office of the United States Trustee (EDNY)
Rachel Wolf, Esq.
U.S. Federal Office Building
201 Varick Street, Suite 1006, New York, NY 10014
(212) 510-0500 (Ext. 238)
USTPRegion02.BR.ECF@usdoj.gov
rachel.wolf@usdoj.gov


Dated:  New York, New York
        June 28, 2021

                                                /s/ Gabriela P. Cacuci
                                                  Gabriela P. Cacuci